JOURNAL ENTRY AND OPINION
Bella Milinevskaya claims Cuyahoga County Juvenile Court Judge John W. Gallagher erred when he granted permanent custody of her son, Michael Breslav, to the Cuyahoga County Department of Children and Family Services (CCDCFS). She maintains that her parental rights were improperly terminated, pursuant to R.C. 2151.414 (E) (2), because the judge failed to determine that her psychiatric problems were so severe that she would be unable to provide an adequate home for Michael within one year and, further, that her due process rights were violated when, in derogation of R.C. 2151.414 (C), the guardian ad litem tailed to submit his written report and recommendations to the court prior to the adjudicatory hearing.
CCDCFS counters that ample evidence supported the contention Milinevskaya was so psychologically impaired that reunification with Michael, within a one year time frame, was impossible, and that the guardian ad litem's omission, although waived by Milinevskaya, was harmless error. For the following reasons, we vacate the judgment entry and remand for corrections.
From the transcript of the hearings of September 15th and 18th, 1998, we note the following: Susan Peevlar, a social worker for CCDCFS, testified that Michael was born to Bella Milinevskaya and Oleg Goldberg on February 27, 1997. The CCDCFS received its first referral about the family on February 28, 1997, because of concerns about the mental health of both parents and the child's well being. CCDCFS did not attempt to take the infant from his parents, but instead issued a protective plan to allow him to remain in the care of his mother. This plan required Milinevskaya and the child to live with the Kazen family, a Rabbi and his wife who often helped Russian immigrants and who agreed to assist Milinevskaya with the care of the child, as well as provide twenty-four hour supervision of both.
This arrangement lasted until June 1997, when Mrs. Kazen requested the Milinevskaya and Michael be removed from her home because of Milinevskaya's verbal abuse and contention that Mrs. Kazen believed Michael was the Messiah and wanted to sell him. Another family in the Russian community came forward and offered their service; however, upon meeting Milinevskaya, the family immediately withdrew its offer. Because of Milinevskaya's inability to provide adequate shelter and care for her child, CCDCFS assumed temporary custody of Michael on June 19, 1997.
Peevlar testified that both Milinevskaya and Goldberg had been involved with Jewish Family Services for quite some time: Milinevskaya since 1993, and Goldberg since 1991. Specifically, since 1993 Milinevskaya, under the direction of case manager Ida Prilutsky, had been receiving mental health care from Dr. Fiocci, a psychiarist. Prilutsky's duties were to assist Milinevskaya in maintaining her counseling sessions and appointments, and to monitor her ingestion of medication. Despite their efforts, Milinevskaya discontinued her treatment sessions and became inconsistent in taking her medication.
Both Milinevskaya and Goldberg had been diagnosed with a schizo-affective disorder and depression. Peevlar stated that, consistent with the symptoms of this illness, Milinevskaya claimed to hear the devil's voice uttering instructions, and believed she was pursued by people with the ability to read her mind. On the day that Michael was taken into custody, Milinevskaya stated that the devil had directed her to shoot the social worker.
Peevlar went on to state that these various services were provided to Milinevskaya and Goldberg in an attempt to secure their mental health, as well as reunite them with Michael. In June 1997, a case plan was designed for Milinevskaya that included parenting education, counseling, and the aforementioned psychological counseling. Although Milinevskaya was attentive at times, she did not remain consistent with the counseling services, and at the time of the permanent custody hearing had no longer availed herself of these services. Peevlar went on to state that although Milinevskaya did complete the parenting program, which was somewhat effective, time has shown that her mental illness is so severe that it makes her incapable of being able to provide a secure and safe environment for her son. Peevlar noted that Michael developed a flat head and developmental delays as a result of low stimulation levels while in Milinevskaya's care. This occurred even though she was staying with the Kazens, where she was constantly monitored. According to Peevlar, the child had low muscle tone and was unable to crawl or support himself on his legs even though holding onto a chair.
Ellen Wirtz, employed by the Bellefaire Jewish Children's Bureau as a special foster care manager, testified that in June 1997, she was assigned as case manager for Michael. Wirtz testified that her duties were to work with children, identify the special needs in foster families, and develop treatment plans as a result. Wirtz stated that her initial contact with Michael raised several concerns: (1) his flat head; (2) tantrums; (3) difficulty in eating in any position besides laying down; and (4) sensory impairment. As a result, Wirtz referred Michael to the Early Intervention Program for an assessment, and contacted a neurologist to conduct an MRI. The Early Intervention team recommended that Michael be given sensory stimulation, facial massages, tooth brushing, textured food, and a structured environment where he would receive verbal clues as an aid to accomplish tasks.
Wirtz testified that she visited with both Milinevskaya and Goldberg from July 1997 through October 1997, and after her own maternity leave, resumed in March 1998. She was convinced Milinevskaya and Goldberg were both loving parents, but due to their mental health and Michael's special needs, they could never provide a secure and stable environment for him either individually or together.
Douglas Waltman, a psychiatrist with the Juvenile Court Diagnostic Clinic, stated that his primary function is to assess, for the court, the mental health of both adults and children. He stated that he was given the referral for Milinevskaya and Goldberg on June 23, 1998, and asked to determine their capacity to act as responsible parents. During the assessment Dr. Waltman learned that both had been diagnosed with schizo-affective disorder, and concurred with this diagnosis. He went on to state that Milinevskaya's mental illness was chronic and had persisted for approximately five to six years. Dr. Waltman explained that schizo-affective disorder is a major psychiatric disorder which culminates in unstable moods, depression, mania, poor contact with reality, delusions, and hallucinations. To illustrate how Milinevskaya's illness manifested itself in her behavior, Dr. Waltman cited her history of delusions regarding the devil, and the belief that others were trying to take Michael from her because he was the Messiah. He went on to say that the disorder results in poor judgment and an inability to endure stress. The addition of a young child to a home with a parent suffering from this disorder would compromise any sense of stability the parent may feel, and would result in neglect of the child. Dr. Waltman went on to state that Milinevskaya's chronic history of mental illness, an unstable marriage, the history of domestic violence, a demonstrated failure to maintain the proper medication, and a lack of family support all prove that Milinevskaya and Goldberg will not be able to safely parent Michael at any time in the foreseeable, future. This, coupled with Milinevskaya's refusal to acknowledge the existence of her illness and her inability to understand why Michael was removed from her care, shows a lack of commitment to remedy the present situation in an attempt to attain reunification with her child.
On June 19, 1997, Michael was placed in the pre-dispositional temporary custody of the CCDCFS, and was placed in a foster home. On June 25, 1997, a complaint was filed in the Cuyahoga County Juvenile Court by the CCDCFS seeking temporary custody of Michael. On September 4, 1997, the child was adjudicated dependent and placed in the temporary custody of the CCDCFS.
On January 22, 1998, the CCDCFS filed a motion to modify its temporary custody to permanent custody. Hearings were held on that motion on September 15 and 18, 1998, and on September 29, 1998, the judge granted the motion for permanent custody.
Because Milinevskaya's first and third assignments of error are interrelated in both law and fact, they will be treated together.
 I. THE TRIAL COURT'S JOURNAL ENTRY — FINDING OF FACT STATING THE "MOTHER HAS PSYCHIATRIC PROBLEMS WHICH PREVENT HER FROM PROVIDING PROPER CARE FOR THE CHILD" WAS INSUFFICIENT TO AWARD PERMANENT CUSTODY TO THE DEPARTMENT OF CHILDREN AND FAMILY SERVICES.
 III. THE TRIAL COURT'S FINDING THAT THE APPELLANT HAS PSYCHIATRIC PROBLEMS WHICH PREVENT HER FROM PROVIDING PROPER CARE FOR THE CHILD WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Milinevskaya argues, pursuant to 2151.414 (E), that there was insufficient evidence to prove that her psychiatric problems were so severe that they prevented her from providing proper care for Michael within the allotted one year time frame, that CCDCFS made a cursory attempt to reunify her with her child pursuant to R.C.2151.419 (A), and also failed to help her remedy the problems, as required by R.C. 2151.414 (E) (1), which led to Michael's removal from her care. Milinevskaya further maintains that the journal entry awarding permanent custody to CCDCFS was insufficient according to law.
CCDCFS argues the award of permanent custody was appropriate because, despite their constant efforts to educate and treat Milinevskaya, ample evidence was presented proving the severity of her chronic mental condition, and its effects on her ability to rear the child. CCDCFS further maintains the journal entry is sufficient because each statutory factor for a court's decision need not be listed for the entry to have effect.
Milinevskaya maintains that the journal entry is insufficient:
 "that the continued residence of the children (sic) in their (sic) home will be contrary to their (sic) best interest and welfare for the following reasons: mother has psychiatric problems which prevent her from providing proper care for the child."
R.C. 2151.414 does not mandate a judge to specifically use the exact language of the relevant statute in its findings in the journal entry, and the failure to do so is not a basis for reversal. In re Covin (1982), 8 Ohio App.3d 139, 456 N.E.2d 520. See, also, In re Shawn W. (Sept. 30, 1996), Lucas App. No. L-95-267, unreported. We agree the journal entry that terminated Milinevskaya's parental rights reflects both a reliance on a standardized form and a failure to proofread because it refers to "children" rather than her single child. We further agree that the language used is inelegant and the same type used by this judge inIn Re Tyrene Williams (Feb. 10, 2000), Cuyahoga App. No. 74921, unreported, noted by Judge Rocco in his concurring opinion as not containing the findings necessary to support the transfer of custody to the CCDCFS. The question becomes, therefore, whether the ultimate determination terminating custody is supported by clear and convincing evidence and whether the journal entry substantially complies with statutory and due process requirements.
R.C. 2151.419 provides in pertinent part:
 (A) (1) Except as provided in division (A) (2) of this section, at any hearing held pursuant to section 2151.28
or 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts. In determining whether reasonable efforts were made, the child's health and safety shall be paramount.
R.C. 2151.414 provides in pertinent part:
 (B) (1) Except as provided in division (B) (2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and
that any of the following apply:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition issued under section 2151.353 or 2151.415 of the Revised Code for twelve or more months of a consecutive twenty-two month period ending on or after the effective date of this amendment, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
***
 (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A) (4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A) (4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A) (4) of section 2151.353 of the Revised Code; *** (Emphasis added.)
A reviewing court will not overturn an order for permanent custody unless it finds the judge acted in a manner which was arbitrary, unreasonable, or capricious. In re Levetta Gabriel
(Feb. 26, 1998), Cuyahoga App. No. 72374, unreported. As in this case, once clear and convincing evidence is presented at the adjudicatory hearing that the child is a dependent child, an adjudication of dependency may be entered and the judge may proceed to disposition. In re Matthew Vinci (Sept. 3, 1998.), Cuyahoga App. No. 73043, unreported. The judge may then grant permanent custody at the dispositional hearing if he determines by clear and convincing evidence, in accordance with R.C. 2151.414 (E):
 "that the child cannot be placed with either parent within a reasonable time, or should not be placed with either parent, and if it determines, in accordance with 2151.414 (D), that permanent commitment is in the best interest of the child. R.C. 2151.353 (A) (4)."
In re Vinci, supra. Clear and convincing evidence is defined as "that measure or degree of proof which is more than a mere `preponderance of the evidence' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts to be established." Inre Awkal (1994), 95 Ohio App.3d 309, 315, 642 N.E.2d 424.
Prior to seeking permanent custody an agency must make a good faith effort to implement a reunification plan. In re Angel Grant
(Mar. 12, 1998), Cuyahoga App. No. 71046, unreported. A good faith effort has been determined to be "an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." In re Weaver (1992), 79 Ohio App.3d 59,606 N.E.2d 1011. See, also, In re Grant, supra.
From a review of the record, it is clear that CCDCFS formulated a case plan to aid Milinevskaya and Goldberg in the treatment of their psychiatric problems, and consequently, in their ability to maintain a proper and stable home environment. In fact, Jewish Family Services began treating each parent well before the birth of Michael. The evidence presented indicates that, although Milinevskaya did complete her parental classes and made efforts to regularly take her medication, each service provider was of the opinion that her mental problems were too severe to properly raise a child. Further, Dr. Waltman offered ample reasons why this disease, and its treatment, are inconsistent with the needs of the child and the stresses associated with everyday child rearing.
In short, ample testimony was provided which clearly indicated that Milinevskaya suffers from a severe and chronic mental illness which severely hinders her ability to provide an adequate permanent home for Michael within the next year, and likely a lifetime. As a result, since CCDCFS made every reasonable effort to reunify Michael with his mother through case plans and education, and since all measures unfortunately failed due to her mental condition, the judge had sufficient clear and convincing evidence to support the transfer Michael's custody to CCDCFS pursuant to R.C. 2151.414 (E) (2).
The journal entry, however, finds the child dependent but "not abandoned or orphaned"; found that CCDCFS made reasonable efforts to prevent removal of the "children" not the "child" from "their" not "his" home; found that the continued residence of the "children" in "their" home is contrary to "their" best interest and welfare instead of finding "that it is in the best interest of the child to grant permanent custody of the child" to CCDCFS; and, while finding that Milinevskya had "mental problems that prevent her from providing proper care," did not state that the child could not be placed with either parent within a reasonable time or should not be placed with either parent.
As stated above, there is ample evidence supporting the termination of Milinevskaya's parental rights but far too many typographical and contextual errors in the journal entry to survive statutory scrutiny. We vacate the journal entry and reinstate the order granting temporary custody of the child to CCDCFS pending journalization of an entry comporting with the requirements of R.C.2151.414 and remand.
Accordingly, Milinevskaya's first assignment of error has merit, in part, and her third assignment of error is overruled.
The second assignment of error reads:
 II. THE APPELLANT'S RIGHT TO DUE PROCESS WAS VIOLATED WHEN THE CHILD'S GUARDIAN AD LITEM REPORT AND RECOMMENDATION WAS SUBMITTED TO THE COURT AFTER THE ADJUDICATORY HEARING WAS COMPLETED.
Milinevskaya argues that the right to raise one's child is an essential and basic civil right and the judge violated her due process rights when, contrary to R.C. 2151.414 (C), he held the permanent custody hearings prior to the submission of Mr. Patrick Talty's guardian ad litem written report and recommendations. This failure, she argues, did not allow her an opportunity to challenge and respond to that report, thus denying her the necessary procedural and substantive protections allowed by law.
CCDCFS counters that due to Milinevskaya's failure to object at the hearing, this claimed error is waived. In the alternative, CCDCFS maintains that this alleged procedural error is harmless.
R.C. 2151.414 (C) provides:
 (C) In making the determinations required by this section or division (A) (4) of section 2151.353 of the Revised Code, a court shall not consider the effect the granting of permanent custody to the agency would have upon any parent of the child. A written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing held pursuant to division (A) of this section or section 2151.35 of the Revised Code but shall not be submitted under oath. (Emphasis added.)
Milinevskaya is correct in her assertion that the judge did not comply with the mandates of R.C. 2151.414 (C), when he held the hearings prior to the guardian ad litem's submission of his September 25, 1998 report. However, Milinevskaya incorrectly asserts that the decision was rendered prior to the report's submission. Transfer of permanent custody to CCDCFS did not occur until September 28, 1998, and was not journalized until October 6, 1998. Nevertheless, the failure of a guardian ad litem to timely file a written report and recommendation is a dereliction of statutory duty, and error. In the Matter of Malone (May 11, 1994), Scioto App. No. 93CA2165, unreported. However, when one fails to object or otherwise call this error to the attention of the judge, such an error is deemed waived. Cordell v. Cordell (Apr. 2, 1992), Cuyahoga App. Nos. 60049, 60050, unreported.
It is worth noting that a number of courts have determined that when parents cannot establish any prejudice arising from the misfeasance, or nonfeasance, of a guardian ad litem, it is harmless error. In the Matter of Malone, supra. It is clear from the record, as well as the report itself, that Milinevskaya did not and could not establish prejudice from the untimely filing of the guardian ad litem's report. It contains a recitation of the records and reports reviewed, Talty's presence at hearings and his personal observations and opinions. His opinions mirror those of the professionals involved in this case and did not provide any information or opinions not presented at the hearings. Because Milinevskaya cannot produce evidence of prejudice from the above alleged error, this assignment of error is overruled.
The journal entry is vacated and we reinstate the order granting temporary custody of the child to CCDCFS pending journalization of an entry comporting with the requirement of R.C.2151.414 and remand for correction of errors and, for appropriate statutory context.
It is ordered that each party shall bear its own costs herein taxed.
This court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court, Juvenile Court Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ______________________ ANNE L. KILBANE, JUDGE
 TIMOTHY E. McMONAGLE, P.J., AND PATRICIA ANN BLACKMON, J., CONCUR.